COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-03-404-CR

 

 

MICHAEL DAVID ALLEN                                                       APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

    FROM THE 396TH
CRIMINAL DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

                                            Introduction

Appellant Michael David Allen appeals his
convictions for aggravated sexual assault of a child under fourteen years of
age and indecency with a child.  In three
points, appellant contends that the evidence is factually insufficient to
support his convictions and that the trial court erred in failing to limit the
jury=s
consideration of extraneous offense evidence during the guilt-innocence phase
of the trial and allowing the jury to deliberate with fewer than twelve jurors
present.  We affirm.








                         Background
Facts and Procedural History

In May 2001, when A.J. was about twelve years
old, he moved into a house in White Settlement, Texas with his mother, one of
his younger brothers, appellant, appellant=s
twenty-year-old daughter, and the daughter=s
boyfriend. Appellant was A.J.=s mother=s
boyfriend.  Over the next few months,
A.J.=s mother
and appellant=s daughter observed several
instances of suspicious activity between appellant and A.J.

On one occasion, when A.J.=s mother
was out of town, appellant=s
daughter noticed that A.J. was not sleeping in the room he shared with his
brother.  When she went to appellant=s
bedroom to ask where A.J. was, she found the door locked.  Without opening the door, appellant told his
daughter that A.J. was in the room with him watching television.  The next morning, she saw that A.J. had not
returned to his own bedroom to sleep. 
When she confronted appellant, he explained that A.J. had fallen asleep
in his room. 

Another time, appellant=s
daughter came home to find the front door lockedCwhich
was uncommon when someone was homeCand A.J.=s
brother playing next door.  After using
her key to enter the house, she observed appellant, who was not wearing a shirt
and whose hair was wet, exiting the bathroom where A.J. was taking a shower. 








A third incident occurred when appellant=s
daughter returned home early from the laundromat.  Once again, she had to unlock the front door
with her key.  As she walked past
appellant=s bedroom, he opened the bedroom
door and she could see A.J. standing behind him, buttoning his pants. 

When appellant=s
daughter shared her concerns with A.J.=s
mother, A.J.=s mother admitted that she had
witnessed a similar incident.  A.J.=s mother
testified that, upon returning home from driving one of her children to
Midlothian, she found A.J.=s
brother taking a bath in the hallway bathroom and appellant in his bedroom with
the door locked.  She knocked on the
bedroom door for about five minutes before appellant opened it.  When he did, she saw A.J. in the master
bathroom pulling up his pants. 








Shortly after appellant=s
daughter discussed the situation with A.J.=s
mother, a friend in whom appellant=s
daughter had confided reported the suspected abuse to Child Protective Services
(CPS).  When questioned, A.J. gave the
police a written statement indicating that appellant had tried to perform oral
sex on him one time when his mother was at the laundromat. Similarly, he told
the doctor who performed the sexual abuse examination that he had avoided
appellant=s attempt to have anal and oral
sex with him one time when his mother was at the laundromat.  He also indicated that appellant had abused
him on other occasions, attempted to have anal sex with him once in a motel,
and masturbated in front of him. 

Appellant was indicted for the first-degree
felony offense of aggravated sexual assault of a child under fourteen years of
age and the third-degree felony offense of indecency with a
child-exposure.  He pleaded not guilty to
the charges and was tried before a jury. 








During the guilt-innocence phase of trial, A.J.=s mother
and appellant=s daughter testified about the
incidents described above.  A.J.=s mother
also testified that A.J. had previously reported being sexually abused by
appellant when the family lived in Henderson County, Texas.  She explained that A.J.=s outcry
to a camp counselor was investigated by the police and CPS, but resulted in a
no-bill from a Henderson County grand jury. 
She further testified that appellant quit his job of twenty years and
moved from Texas to Washington state when CPS began investigating the report
that led to the current charges.  A.J.
testified that appellant performed oral sex on him at least four times, offered
A.J. money to perform oral sex on him, and exposed himself to A.J. when they
lived in White Settlement.  Further, he
testified that appellant attempted to have anal sex with him in either White
Settlement or their previous home in Henderson County.  He also recalled numerous instances of abuse
that took place in Henderson County.  The
doctor who examined A.J. also testified to the statements A.J. made to her.

The jury found appellant guilty of the charged
offenses and assessed his punishment at forty-six years=
incarceration for aggravated sexual assault and ten years=
incarceration for indecency with a child. 

                             Factual
Sufficiency of the Evidence

In his first point, appellant contends that the
State failed to provide factually sufficient evidence to support his conviction
for aggravated sexual assault of a child because A.J.=s
testimony was vague, it conflicted with a statement he had given to police, and
it was contradicted by other evidence in the record.  Appellant further argues that the evidence is
factually insufficient to prove indecency with a child because the State relied
on A.J.=s
testimony together with circumstantial and inconclusive evidence from appellant=s wife
and daughter.  We disagree.








In reviewing the factual sufficiency of the
evidence to support a conviction, we are to view all the evidence in a neutral
light, favoring neither party.[1]  The only question to be answered in a factual
sufficiency review is whether, considering the evidence in a neutral light, the
fact finder was rationally justified in finding guilt beyond a reasonable
doubt.[2]  There are two ways evidence may be factually
insufficient: (1) the evidence supporting the verdict or judgment, considered
by itself, is too weak to support the finding of guilt beyond a reasonable
doubt; or (2) when there is evidence both supporting and contradicting the
verdict or judgment, weighing all of the evidence, the contrary evidence is so
strong that guilt cannot be proven beyond a reasonable doubt.[3]
 AThis
standard acknowledges that evidence of guilt can >preponderate= in
favor of conviction but still be insufficient to prove the elements of the
crime beyond a reasonable doubt.@[4]  In other words, evidence supporting a guilty
finding can outweigh the contrary proof but still be insufficient to prove the
elements of an offense beyond a reasonable doubt.[5]









In performing a factual sufficiency review, we
are to give deference to the fact finder=s
determinations, including determinations involving the credibility and demeanor
of witnesses.[6]  We may not substitute our judgment for that
of the fact finder=s.[7]  A factual sufficiency review of
circumstantial evidence is the same as a review of direct evidence.[8]


A person commits the offense of aggravated sexual
assault if he intentionally or knowingly causes the sexual organ of a child to
contact or penetrate the actor=s mouth.[9]  A person commits the offense of indecency
with a child-exposure if, with a child younger than seventeen years and not the
person's spouse, the person exposes the person's anus or any part of the
person's genitals, knowing the child is present, with the intent to arouse or
gratify the sexual desire of any person.[10]  When the evidence in this case is viewed in a
neutral light, it rationally justifies the jury=s
findings that appellant sexually assaulted and exposed himself to A.J.  The evidence supporting each element of the
charged offenses is strong enough to support a finding of appellant=s guilt
beyond a reasonable doubt and the supposedly contradictory evidence cited by
appellant is not strong enough to negate that finding.








Standing alone, A.J.=s
testimony that appellant performed oral sex on him at least four times when
they lived in White Settlement is sufficient to sustain appellant=s
conviction for aggravated sexual assault, and his testimony that appellant
exposed himself to him supports appellant=s
conviction for indecency with a child.[11]  Appellant=s
convictions are further supported by the doctor=s
testimony and the testimony of A.J.=s mother
and appellant=s daughter.  The doctor=s
testimony that A.J. told her about appellant masturbating in front of A.J.
supports the indecency with a child charge, and her testimony that A.J. said
appellant abused him before the laundromat incident supports the aggravated
sexual assault charge.  A.J.=s mother=s and
appellant=s daughter=s
testimony, though circumstantial, supports both charges by showing that
appellant and A.J. spent time alone together in closed rooms in various states
of undress. 








Appellant cites inconsistent testimony from A.J.
and evidence of A.J.=s motivation to fabricate the
allegations against him as contradictory evidence.  Although A.J. testified about numerous
incidents of abuse, his written statement mentions only one of appellant=s
attempts to perform oral sex on him. 
Nothing in the written statement, however, indicates that A.J. intended
it to be a complete account of his sexual abuse history.  Rather than contradict his written statement,
A.J.=s
testimony simply revealed more of the abuse. 


Other alleged inconsistencies pointed out by
appellant are the different answers given by A.J. when he was asked whether
appellant had exposed himself to him. 
When A.J. was questioned about appellant giving him oral sex, he said
that appellant did not expose himself. 
Later, when A.J. was asked whether appellant exposed himself when he
offered A.J. money to perform oral sex on him, A.J. said that he had.  A.J.=s
answers are not clearly contradictory because the exposure questions were asked
in different contexts. It is entirely possible that appellant exposed himself
when he was trying to persuade A.J. to give him oral sex, but not when he was
performing oral sex on A.J.








Appellant also contends that the evidence of A.J.=s
motivation to fabricate the allegations against him was strong enough to negate
the jury=s
findings of guilt.  Appellant attacked
A.J.=s
credibility by alleging that A.J. lied about the abuse because he wanted his
mother and father to reunite.  A.J.=s mother
testified that A.J. loved his father and wanted her to get back together with
him.  She testified that the children=s
babysitter reported overhearing A.J. tell a friend that ACPS was
going to believe him because Mommy and Daddy are going to get back together.@  A.J.=s mother
also testified, however, that A.J. loved appellant.  The jury was the factfinder in this case and,
as such, it was the jury's responsibility to resolve any conflicts in the testimony.[12]
 Moreover, we may not substitute
our judgment for that of the jury on the issue of witness credibility.[13]


Because the evidence supporting each element of
the offenses charged  is strong enough to
support a finding of appellant=s guilt
beyond a reasonable doubt and there is no contradictory evidence strong enough
to negate that finding, we hold that the evidence is factually sufficient to
support both of appellant=s convictions.  We overrule appellant=s first
point.

                   Extraneous
Offense Reasonable Doubt Instruction








In his second point, appellant complains that the
trial court erred by failing to include a reasonable doubt instruction regarding
extraneous offense evidence in the jury charge at guilt-innocence.  It is undisputed that appellant never
requested such an instruction.  It is
also undisputed that appellant never objected to the admission of the
extraneous offenses he allegedly committed in Henderson County or requested a
limiting instruction when the evidence was admitted or at the charge
conference.  Appellant contends, however,
that the trial court was required to instruct the jury sua sponte not to
consider evidence of extraneous offenses he committed against A.J. unless his
commission of those offenses was proven beyond a reasonable doubt.  

Article 38.37 of the code of criminal procedure
provides that, in a sexual assault of a child case, evidence of extraneous
offenses committed by the defendant against the child is admissible to show the
state of mind of the defendant and child and their previous and subsequent
relationship.[14]  Because all of the extraneous offense
evidence in this case pertains to offenses that appellant committed against
A.J., it was admissible under article 38.37.[15]  Further, because appellant failed to request
a limiting instruction at the time the extraneous offense evidence was
admitted, it was admitted for all purposes.[16]








In Huizar v. State, the court of criminal
appeals held that the reasonable doubt instruction mandated by article 37.07,
section 3(a) is statutorily prescribed law applicable to the case at the
punishment phase of a noncapital trial.[17]  Therefore, the Huizar court held a
trial court must sua sponte include a reasonable doubt instruction regarding
extraneous offense evidence at the punishment phase of trial.[18]








Article 37.07, section 3(a) is not, however, the
law applicable to the case at the guilt-innocence phase of trial; the statutory
language specifically restricts its application to the punishment phase.[19]  Moreover, appellant has not cited any case,
and our research has revealed none, in which the court of criminal appeals has
held that a sua sponte reasonable doubt instruction regarding extraneous
offenses is required at guilt-innocence.[20]  Accordingly, we decline to extend Huizar
to hold that a sua sponte reasonable doubt instruction regarding the extraneous
offense evidence was required at the guilt-innocence phase of appellant=s trial.[21]  We overrule appellant=s second
point.

                                         Jury
Misconduct








In his final point, appellant complains that some
jurors engaged in misconduct by deliberating before all twelve jurors were
present and by conducting independent research on the recidivism rate of child
molesters.  To preserve a complaint for
our review, a party must make a timely, specific objection and must obtain an
adverse ruling from the trial court.[22]  Because appellant raised his juror misconduct
complaint for the first time on appeal, he failed to preserve it.  We overrule appellant=s third
point.

                                             Conclusion

Having overruled all of appellant=s
points, we affirm the trial court=s
judgment.

JOHN
CAYCE

CHIEF
JUSTICE

 

PANEL A:   CAYCE, C.J.; DAUPHINOT
and GARDNER, JJ.

PUBLISH

 

DELIVERED: November 17,
2005











[1]See Zuniga v. State,
144 S.W.3d 477, 481 (Tex. Crim. App. 2004). 






[2]Id. at 484.





[3]Id. at 484-85.





[4]Id. at 485. 





[5]Id.





[6]Id. at 481; Cain v. State,
958 S.W.2d 404, 407 (Tex. Crim. App. 1997).





[7]Zuniga, 144 S.W.3d at 482.





[8]King v. State, 29 S.W.3d 556, 565
(Tex. Crim. App. 2000); Kutzner v. State, 994 S.W.2d 180, 184 (Tex.
Crim. App. 1999).





[9]Tex.
Penal Code Ann.
' 22.021(a)(1)(B)(iii)
(Vernon Supp. 2005). 





[10]Id. ' 21.11 (Vernon 2003).





[11]See West v. State, 121 S.W.3d 95, 111
(Tex. App.CFort Worth 2003, pet. ref=d); Empty v. State,
972 S.W.2d 194, 196 (Tex. App.CDallas 1998, pet. ref=d) (both holding that a
child=s uncorroborated
testimony is sufficient to support a sexual assault conviction). 





[12]See Dumas v. State, 812 S.W.2d
611, 615 (Tex. App.CDallas 1991, pet. ref=d).





[13]Empty, 972 S.W.2d at 196‑97.





[14]Tex.
Code Crim. Proc. Ann. art. 38.37, '' 1B2 (Vernon Supp. 2005); see
also Tex. R. Evid. 404(b).





[15]The extraneous offense
evidence consisted of A.J.=s mother=s testimony about A.J.=s outcry to a camp
counselor when they lived in Henderson County; A.J.=s testimony that
appellant masturbated in front of him, made A.J. rub appellant=s genitals, and sucked on
A.J.=s toes in Henderson
County, and that appellant attempted to have anal sex with him in Henderson
County or White Settlement; and the doctor=s testimony that A.J. told her appellant had
attempted to have anal sex with him.





[16]Tex.
R. Evid.
105(a); Hammock v. State, 46 S.W.3d 889, 895 (Tex. Crim. App. 2001).





[17]12 S.W.3d 479, 483 (Tex.
Crim. App. 2000); see Tex. Code
Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2005).





[18]Huizar, 12 S.W.3d at 484.  Appellant received such an instruction at
punishment in this case.  





[19]See Tex. Code Crim. Proc. Ann. art. 37.07, ' 3(a). 





[20]The court of criminal
appeals has held only that such an instruction is required if the defendant
requests one.  See, e.g., Ex parte
Varelas, 45 S.W.3d 627, 631 (Tex. Crim. App. 2001) (citing Mitchell v.
State, 931 S.W.2d 950, 954 (Tex. Crim. App. 1996) (plurality op.) and Harrell
v. State, 884 S.W.2d 154, 157 (Tex. Crim. App. 1994)).





[21]The intermediate courts
of appeals are split over whether Huizar should be extended to require a
sua sponte reasonable doubt instruction for extraneous offense evidence at
guilt-innocence.  See Rodriguez v.
State, 137 S.W.3d 228, 231 (Tex. App.CHouston [1st Dist.] 2004, no pet.); Gilbert v.
State, No. 14-02-00727-CR, 2003 WL 22176625, at *4 (Tex. App.CHouston [14th Dist.]
Sept. 23, 2003, no pet.) (mem. op.) (not designated for publication); Salazar
v. State, No. 07-01-00389-CR, 2002 WL 246642, at *3 (Tex. App.CAmarillo Feb. 21, 2002,
pet. ref=d) (not designated for
publication) (all refusing to extend Huizar to guilt-innocence phase
jury charge).  But see Rodgers v.
State, Nos. 10-04-00280-CR, 10-04-00281-CR, 2005 WL 2787566, at *5-6 (Tex.
App.CWaco Oct. 26, 2005, no
pet. h.) (holding that sua sponte reasonable doubt instruction regarding
extraneous offenses is required at guilt-innocence because it is Alaw applicable to the
case@); Chapa v. State,
No. 04-02-00346-CR, 2003 WL 1025148, at *1 (Tex. App.CSan Antonio Mar. 12,
2003, pet. ref=d) (mem. op.) (not
designated for publication); Arnold v. State, No. 05-01-01733-CR, 2002
WL 31565937, at *1 (Tex. App.CDallas Nov. 20, 2002, no pet.) (not designated
for publication) (both assuming that Huizar applies to extraneous
offense evidence admitted at guilt-innocence).





[22]Tex.
R. App. P.
33.1(a).